UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy Martin

    v.                                Civil No. 19-cv-00323-LM
                                        Opinion No. 2020 DNH 028
Susan E. Mooney; et al.

## O R D E R

This dispute arises from an employment relationship gone awry. Plaintiff Timothy Martin was the administrator at a continuing care retirement community. His employer fired him and sent a memorandum to community residents stating that Martin had been "terminated . . . because of a pattern of unprofessional conduct." Doc. no. 1-1. A local newspaper subsequently learned Martin had been fired and published two front-page stories about Martin's termination. Martin alleges that his former employer, its President, and the employer's controlling entity are liable for privacy violations, defamation, and breach of contract. He also alleges that the employer's President, Dr. Mooney, is personally liable for intentional infliction of emotional distress.

Defendants move to dismiss, arguing that the employer's controlling entity cannot be held liable for the alleged misconduct, and that all claims should be dismissed against all defendants because Martin's claims lack facial plausibility.

See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Martin
objects.  For the following reasons, the court dismisses the
employer's controlling entity as a defendant.  As to Martin's
claims against the remaining defendants, the court grants the
motion in part and denies it in part.


**STANDARD OF REVIEW**

    Under Rule 12(b)(6), the court must accept the factual
allegations in the complaint as true, and draw all reasonable
inferences from those facts in the plaintiff's favor.  Foley v.
Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014).
The court may also consider documents attached to the complaint
and documents expressly incorporated into it.  Id. at 72.  The
court must then "determine whether the factual allegations in
the plaintiff's complaint set forth a plausible claim upon which
relief may be granted."  Id. at 71 (internal quotation marks
omitted).  A claim is facially plausible "when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  Iqbal, 556 U.S. at 678.  However, a
pleading "that offers labels and conclusions or a formulaic
recitation of the elements of a cause of action will not do."
Id. (quotations omitted).

## BACKGROUND

The following facts are taken from Martin's complaint and the attached documents.  In August 2014, defendant Alice Peck Day Memorial Hospital hired Martin to administer a 63-unit continuing care retirement community called The Woodlands. Defendant Dr. Susan E. Mooney is the President of Alice Peck Day Memorial Hospital ("Hospital").  Defendant Alice Peck Day Lifecare Center, Inc. ("Lifecare"), a subsidiary of Alice Peck Day Hospital, owns and operates both The Woodlands and Harvest Hill, a 76-unit residential assisted living facility.  Defendant Dartmouth-Hitchcock Health ("DHH") is the "controlling entity" of the Hospital and Lifecare.  Doc. no. 1 at ¶ 6.

On February 15, 2018 Dr. Mooney terminated Martin.[1]  That same day, she sent a memorandum to the 139 units at The Woodlands and Harvest Hill informing residents that Martin had been "terminated as the Administrator of The Woodlands because of a pattern of unprofessional conduct."  Doc. no. 1-1 (hereinafter "the Memo").

Two days later, the Valley News, a local newspaper, published a front-page story stating that Martin had been "fired" due to "a pattern of unprofessional behavior."  Doc. no. 1-3 at 1.  The article quoted a Hospital spokesperson who

---

[1] Martin does not challenge Dr. Mooney's right to terminate him.

confirmed that Martin was no longer employed at The Woodlands
but declined to comment on the reasons for Martin's departure,
stating: "Per our policy, we will not comment any further about
a personnel matter."  Doc. no. 1-3 at 1.  The personnel records
page of the Hospital employee handbook states that: the Hospital
"considers personnel files to be confidential"; access to
personnel files is restricted; and information contained in a
personnel file will only be released in limited circumstances.
Doc. no. 1-2.

    One week later, the Valley News published a second front-
page story about Martin's termination stating Martin had been
fired for "a pattern of unprofessional conduct."  Doc. no. 1-3
at 2.  The second article also reported that three of Martin's
former co-workers had complained to management about Martin in
2015 after Martin purportedly initiated physical contact with a
teenage co-worker.

    Martin alleges that because of the "massive news involving
the 'Me Too' movement," individuals who read or learned about
the Memo were left to "wrongly assume the 'unprofessional
conduct' phrase could only mean sexual assault or sexual
harassment of female employees."  Doc. no. 1 at ¶19.  Martin
contends defendants' actions have caused him public
embarrassment, humiliation, and loss of income in his field.

In March 2019, Martin brought this action alleging four claims against all defendants: (I) Invasion of Privacy by Public Disclosure of Private Facts; (II) Invasion of Privacy by Intrusion Upon Seclusion; (III) Defamation; and (IV) Breach of Contract. Martin brings one additional claim against Dr. Mooney: (V) Intentional Infliction of Emotional Distress. Martin seeks compensatory and enhanced compensatory damages as well as attorney's fees and costs. The defendants move to dismiss, arguing both that Martin's claims lack facial plausibility and that DHH cannot be held liable for the purported misconduct. See Iqbal, 556 U.S. at 678.


## DISCUSSION

Before reaching the motion to dismiss on a claim-by-claim basis, the court first considers DHH's liability as a parent corporation.


### I.   DHH's Liability as a Parent Corporation

The court first considers whether DHH can be held liable in this case. Martin does not allege DHH directly committed any wrongdoing. Rather, Martin asserts DHH is liable because DHH is the "controlling entity" of the Hospital and Lifecare (doc. no. 1 at ¶ 6) and has the power to control the Hospital's board of

trustees, approve the Hospital's budget, and terminate the
Hospital's CEO.

"It is a general principle of corporate law deeply
ingrained in our economic and legal systems that a parent
corporation . . . is not liable for the acts of its
subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61
(1998) (quotation omitted); see also Leeman v. Boylan, 134 N.H.
230, 235-36 (1991) (holding a parent corporation is not
vicariously liable solely because it owns a subsidiary).  Nor
does a parent company's "control" over a subsidiary, which may
include "election of directors, the making of by-laws . . . and
the doing of all other acts incident to the legal status of
stockholders," extend subsidiary liability to the parent
company.  See Bestfoods, 524 U.S. at 62.  In limited situations,
a parent company may be held liable for the acts of its
subsidiary; for example, if the corporate form is being used to
accomplish a wrongful purpose such as fraud.  Id.

Martin's complaint does not allege wrongdoing by DHH or
include facts that support a reasonable inference that the
corporate relationship between DHH and the Hospital is being
used to accomplish a wrongful purpose.  Therefore, the court
dismisses all claims against DHH because the court cannot
reasonably infer that DHH is liable for the alleged misconduct.
See Iqbal, 556 U.S. at 678.

II.  Motion to Dismiss Counts I-V

The defendants have moved to dismiss each of Martin's five claims.  The court considers each claim in turn.

A. Count I: Public Disclosure of Private Facts

In Count I, Martin alleges that defendants violated his privacy, and are liable for public disclosure of private facts, because Dr. Mooney informed residents that Martin had been terminated "because of a pattern of unprofessional conduct." Doc. no. 1 at ¶ 28.  Under New Hampshire law, a party is liable for public disclosure of private facts if it (1) "gives publicity," (2) to "a matter concerning the private life of another," (3) when the matter publicized "would be highly offensive to a reasonable person," and (4) the matter is "not of legitimate concern to the public." Lovejoy v. Linehan, 161 N.H. 483, 486 (2011) (quoting Restatement (Second) of Torts § 652D). Defendants move to dismiss, arguing Martin's complaint fails to plausibly allege the four elements of a public disclosure of private facts claim.  The court addresses each element of this tort claim below.

1. Publicity

"Publicity" means making a matter public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Karch v. BayBank FSB, 147 N.H. 525, 535 (2002) (quotation omitted).  Whether a disclosure of a private matter has become one of public knowledge "does not, as a matter of law, depend on the number of people told" and "is a conclusion best reached by the trier of fact."  Id.

Defendants argue that Dr. Mooney did not "publicize" the Memo because she only sent it to the community residents, and not to the general public.  Martin counters that Dr. Mooney's distribution of the Memo made it "substantially certain" that the information about Martin's termination would become public knowledge, as it indeed did, because Dr. Mooney sent the memo to over 100 people and it was foreseeable and predictable that one of them would disclose the Memo to the press.

In Karch, the New Hampshire Supreme Court held an employee had plausibly alleged the publicity element of a Public Disclosure of Private Facts claim when the employee's complaint alleged that the employer shared her information with a limited number of co-workers.  Id.  The purported publication in this case exceeds the publication in Karch; therefore, Martin's complaint plausibly alleges the element of publicity.

2. <u>Private Life</u>

To establish the second element, Martin must show the publicized matter concerns his "private life." <u>Lovejoy</u>, 161 N.H. at 486.  Neither the New Hampshire Supreme Court, nor the Restatement (Second) of Torts, have set forth a bright line rule for determining whether a matter concerns a person's private or public life.  See <u>Restatement (Second) of Torts</u> § 652D cmt. b. However, the Restatement offers several examples.  Information about a person that is included in the public record and information about activities a person undertakes "in dealing with the public" involves a person's public life.  <u>Id.</u>  On the other hand, records not open to public inspection, photographs taken without consent in private, sexual relations, intimate personal letters, and other facts that a person "does not expose to the public eye, but keeps entirely to himself or at most reveals to his family or close friends" involve that person's private life.  <u>Id.</u>

Martin alleges that the information in the Memo concerned his private life because: (a) Martin wished the information to be kept private and took no action to share it; (b) the Hospital's personnel policy stated employee information was confidential; and (c) the public would not have learned why Martin left his position but for Dr. Mooney's action.

Defendants counter that information about a person's employment, as a matter of law, concerns that person's public life; accordingly, an employer who shares that information is not liable for public disclosure of private facts.  Defendants rely on three cases in support of this proposition.  See Remsburg v. Docusearch, Inc., 149 N.H. 148, 157 (2003); Moxley v. Reg'l Transit Servs., 722 F. Supp. 977, 980-81 (W.D.N.Y. 1989); McGarry v. Univ. of San Diego, 154 Cal. App. 4th 97, 110 (Cal. Ct. App. 2007).  However, none of these cases supports defendants' proposition.

In Remsburg, the New Hampshire Supreme Court held that an employee's work address is a public matter because the public could learn that information by observing a person's public commute.  149 N.H. 148, 157 (2003).  Nothing about Remsburg leads to the broad conclusion that other kinds of employee information, including the reasons for an employee's termination, are public as a matter of law.

Moxley, a case construing the Fourth Amendment rights of a bus driver who worked for a public transportation authority, also offers no support for defendants' arguments.  In Moxley, the bus driver argued that his employer violated his Fourth Amendment rights by requiring him to take a drug screening test as part of a return-to-work physical.  722 F. Supp. at 980-81.  The court held that the employer had not violated the employee's

constitutional rights because the employer had provided the employee with notice of the drug-screening policy, the employee had consented in writing to the physical, and the employee knew that he would be tested for drugs. Id. Here, Martin is not relying on the Fourth Amendment. He was a private employee at a private facility who did not consent to having information about his termination shared with the residents.

McGarry is even less relevant. McGarry merely held that a terminated football coach could not succeed in a defamation claim against his employer (a public university) because the coach was a public figure and his termination "was already a topic of widespread public interest." 154 Cal. App. 4th at 110, 117. The court acknowledged in McGarry that the plaintiff had not asserted an invasion of privacy claim and declined to address whether the coach had a legitimate expectation of privacy in the university's reasons for terminating him. Id. at 111 n.9.

In sum, the defendants' cited cases fall well short of establishing that, as a matter of law, information about a private employee's termination involves that person's public life. Construed in his favor, Martin's allegations plausibly allege that the Memo contains information "not open to public inspection," as described in the Restatement (Second) of Torts.

See Restatement (Second) of Torts § 652D cmt. b.  At this early

stage, this element is plausibly alleged.


### 3.  Highly offensive

To make out the third element of a claim for public

disclosure of private facts, the "matter publicized" must

concern something that "would be highly offensive to a

reasonable person."  Lovejoy, 161 N.H. at 486 (quotation

omitted).  Defendants argue that informing others of a person's

termination is not, as a matter of law, offensive—especially

when the reasons given are "vague" and "non-detailed."  Doc. no.

5-1 at 7.

In a false-light invasion of privacy claim, this court has

found that an employer's comments conveying that an employee was

"professionally deficient" can be highly offensive.  Wentworth-

Douglass Hosp. v. Young & Novis Prof'l Ass'n, No. 10-CV-120-SM,

2011 WL 446739, at *7 (D.N.H. Feb. 4, 2011); see also Pawlaczyk

v. Besser Credit Union, No. 14-CV-10983, 2014 WL 5425576, at *5

(E.D. Mich. Oct. 22, 2014) (observing it could be "highly

offensive" for an employer to publicize that an employee had

been terminated but holding it was not "highly offensive" for an

employer to state a person was no longer an employee without

disclosing "the nature of the separation or any reasons behind

it"). Thus, at this early stage, Martin's allegations are
sufficient to meet the third element.


### 4. Legitimate Concern to the Public

Under the fourth and final element of this invasion of
privacy tort, defendants can only be held liable for public
disclosure of private facts if the "matter publicized is of a
kind that . . . is not of legitimate concern to the public."
Lovejoy, 161 N.H. at 486 (quotation omitted). A "public concern
is something that is a subject of legitimate news interest; that
is, a subject of general interest and of value and concern to
the public at the time of publication." City of San Diego, Cal.
v. Roe, 543 U.S. 77, 83-84 (2004) (stating that this is the
"same standard used to determine whether a common-law action for
invasion of privacy is present"). However, a line must be drawn
between information to which the public is entitled and "morbid
and sensational prying into private lives for its own sake."
Restatement (Second) of Torts § 652D cmt. h. The limitations
are "those of common decency" and the analysis "becomes a matter
of community mores." Id. Due regard must be given to both
"freedom of the press and its reasonable leeway to choose what
it will tell the public" and "to the feelings of the individual
and the harm that will be done to him by the exposure." Id.

Defendants argue Martin's high-level position as Administrator of The Woodlands rendered his termination and the reasons for it a matter of public concern.  Martin acknowledges that the identity of the Administrator of The Woodlands is a matter of public concern, and "would have been in the 'People' or 'Business' section of a newspaper."  Doc. no. 7-1 at 9.  He argues, however, that the public's "idle interest" in learning the reasons for his departure does not make them a matter of legitimate public concern.  Id.

Generally, a person who "voluntarily places himself in the public eye" by assuming a prominent professional role "cannot complain when he is given publicity that he has sought, even though it may be unfavorable to him."  Restatement (Second) of Torts § 652D cmt. e.  For public figures, permissible publicity may "legitimately extend, to some reasonable degree" to facts "which are not public" even though publicity of those same facts could constitute an invasion of privacy if the person were not a public figure.  Id. at cmt. h.  When analyzing whether a matter is of legitimate concern to the public, "reasonable proportion" should be maintained "between the event or activity that makes the individual a public figure and the private facts to which publicity is given."  Id.

In this case, the event that put Martin in the public eye, his high position at The Woodlands, is connected closely to the

purportedly private matter, the reason for Martin's departure from that position. This high degree of connection strengthens defendants' argument that Martin's termination, and the reasons for it, were matters of legitimate public concern. However, defendants have cited no legal authority that stands for the broad proposition that the reason a private employee leaves a position at a private institution is a matter of legitimate public concern.

At this stage, the court's role is not to "attempt to forecast a plaintiff's likelihood of success on the merits" but rather to focus "on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 13 (1st Cir. 2011). The fourth element is therefore plausibly alleged.

For these reasons, at this early stage, the court concludes that Martin's complaint sets forth a plausible claim that defendants are liable for public disclosure of private facts. Defendants' motion to dismiss Count I is denied.


B. Count II: Intrusion Upon Seclusion

In Count II, Martin alleges that defendants are liable for intrusion upon seclusion because Dr. Mooney "intruded" by

distributing the Memo which contained private information about Martin's termination.

A party is liable for intrusion upon seclusion if it "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." Restatement (Second) of Torts § 652B; Karch, 147 N.H. at 534 (stating that New Hampshire common law for intrusion upon seclusion is "consistent with the Restatement (Second) of Torts § 652B"). Courts and secondary sources have recognized several forms of intrusion including: physical invasion of another's abode, use of technology to eavesdrop on private conversations, and investigating or examining another's private concerns. Karch, 147 N.H. at 534; Restatement (Second) of Torts § 652B; 9 S. Speiser, C. Krause, & A. Gans, The American Law of Torts §§ 30.09-30:19 (2012); 3 D. Dobbs, Law of Torts § 580 (2011). In order for a party to be liable for intrusion upon seclusion, the intrusive conduct must go "beyond the limits of decency" and "the defendant should have realized that it would be offensive to persons of ordinary sensibilities." Karch, 147 N.H. at 534-35 (quotation and brackets omitted). An intrusion upon seclusion claim does not require publicity—although publicity may affect the amount of damages. Hamberger v. Eastman, 106 N.H. 107, 112 (1964).

Defendants' motion to dismiss does not address the threshold question of whether Dr. Mooney's conduct constitutes an "intrusion" as contemplated by this tort. The court observes, however, that neither the parties nor the court have identified any case in which an employer was found liable for intrusion upon seclusion after engaging in conduct comparable to Mooney's. See, e.g., Restatement (Second) of Torts § 652B (no examples comparable to this case); 9 The American Law of Torts §§ 30.09-30:19 (same); 3 Law of Torts § 580 (stating that the "emphasis in the intrusion tort is on the intrusive act" but including no examples of intrusive acts comparable to this case). However, because defendants' motion to dismiss does not appear to dispute that Dr. Mooney's conduct constitutes an "intrusion," the court will limit its analysis to those arguments raised and briefed by the parties.

Defendants urge the court to dismiss Martin's intrusion upon seclusion claim for two reasons: (1) the information in the Memo involved Martin's public life as opposed to a private matter; and (2) Dr. Mooney's conduct was not offensive or beyond the limits of decency as a matter of law.

As the court already explained when reviewing Martin's public disclosure of private facts claim, the cases cited by defendants do not establish that information about a private employee's termination is a public matter.

Turning to defendants' second argument—whether Dr. Mooney's conduct was offensive or beyond the limits of decency—the court observes that although an intrusion upon seclusion claim and a public disclosure of private facts claim both have elements that contain the word "offensive," the elements of the respective torts are not the same. For an intrusion upon seclusion claim, the intrusion must be offensive. Restatement (Second) of Torts § 652B (Intrusion upon Seclusion). On the other hand, a public disclosure of private facts claim requires no intrusion; rather, the matter publicized must be highly offensive. Restatement (Second) of Torts § 652D (Publicity Given to Private Life). Therefore, the court's finding in Count I, that the matter publicized could be highly offensive, has little bearing on the court's analysis in Count II. For purposes of this count, Martin's complaint must plausibly allege that Dr. Mooney intruded and that a reasonable person could find her intrusion offensive. Karch, 147 N.H. at 534.

Whether an "intrusion would be offensive to persons of ordinary sensibilities is ordinarily a question for the fact-finder and only becomes a question of law if reasonable persons can draw only one conclusion from the evidence." Remsburg, 149 N.H. at 156. In making this determination, the fact-finder should consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the

intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Id. (quotation omitted).

Here, relying on the factors set forth by the New Hampshire Supreme Court, and accepting for purposes of this motion that Dr. Mooney's actions constitute an "intrusion," the court cannot conclude as a matter of law that no jury could find for Martin on this fact-dependent tort claim. It is possible, with a more developed record, that a fact-finder could conclude that publicizing the reason for Martin's termination rises to the level of offensive and indecent, especially as there appears to be no reason that the residents of The Woodlands needed to know anything more than the fact that Martin had been replaced. See Karch, 147 N.H. at 534-35. The court holds that Martin's intrusion upon seclusion claim survives dismissal at this early stage. Defendants' motion to dismiss Count II is denied.


C. Count III: Defamation

Martin alleges defendants are liable for defamation because the Memo criticized his professional performance and harmed his professional reputation. Defendants move to dismiss, arguing that Martin's complaint fails to allege the necessary elements of a defamation claim. Alternatively, they argue the statement in the Memo is privileged.

Under New Hampshire law, in order to survive a motion to dismiss, the plaintiff "must have alleged facts that would show that the defendants failed to exercise reasonable care in publishing a _false_ and _defamatory_ statement of fact about the plaintiff[] to a third party." Automated Transactions, LLC v. Am. Bankers Ass'n, 216 A.3d 71, 77 (N.H. Aug. 16, 2019) (quotation and brackets omitted) (emphases added); see also Pierson v. Hubbard, 147 N.H. 760, 763 (2002); Indep. Mechanical Contractors v. Gordon T. Burke & Sons, 138 N.H. 110, 118 (1993). Embedded in this standard is the requirement that the challenged statement be "false" and one "of fact." Automated Transactions, LLC, 216 A.3d at 77; see also Gen. Star Indem. Co. v. Beck, No. 18-CV-108-JD, 2018 WL 3849877, at *4 (D.N.H. Aug. 13, 2018) (stating that a claim for defamation "require[s] as an element that the challenged statement be false").

Martin argues that he has plausibly alleged that the Memo contains a defamatory statement because, under New Hampshire common law, a statement accusing a person of committing a crime, or engaging in activities that would tend to injure him in his trade or business, is defamatory per se. See, e.g., MacDonald v. Jacobs, 171 N.H. 668, 674, cert. denied, 139 S. Ct. 2754 (2019); Chagnon v. Union Leader Corp., 103 N.H. 426, 441 (1961); Jones v. Walsh, 107 N.H. 379, 380 (1966); see also Restatement (Second) of Torts § 570 (1977). A statement that is

defamatory per se is defamatory on its face; therefore, a plaintiff can "recover as general damages all damages which would normally result from such a defamation, such as harm to his reputation," without needing to "prove these damages specifically." Lassonde v. Stanton, 157 N.H. 582, 593 (2008) (quotation omitted).

Defendants argue that the court must dismiss this claim because Martin's complaint does not plausibly allege that the statement in the Memo is false. Defendants raised Martin's failure to allege falsity in their motion to dismiss; however, Martin did not move to amend his complaint to allege that the statement in the Memo was false. Rather, Martin argued in his objection that criticism of professional performance is defamation per se.

Martin cites several cases in support of the proposition that the Memo contains a statement that is defamatory per se. For example, in Jones v. Walsh, the New Hampshire Supreme Court held that an employer may be liable for defamation per se because he publicly accused a waitress of "not ringing the cash up in the cash register" and a restaurant patron could interpret that language as accusing the waitress of a criminal offense or morally reprehensible conduct. 107 N.H. 379, 380 (1966). Here, as in Jones, the statement at issue contains language that could be interpreted as accusing Martin of engaging in behavior which

would tend to injure him in his trade or business.  See also Chagnon, 103 N.H. at 441.  Therefore, the court concludes Martin has plausibly alleged that the Memo is defamatory.

However, the defamation per se doctrine does not obviate the requirement that a statement be false in order for liability to attach under New Hampshire law.  See, e.g., Automated Transactions, 216 A.3d at 77; Pierson, 147 N.H. at 763.  The New Hampshire Supreme Court made this clear in Jones, the defamation per se case cited above, by holding that a statement must "falsely" accuse someone of criminal or morally reprehensible conduct in order for the speaker to be liable for defamation per se.  107 N.H. at 380.[2]  Because falsity is an element of New Hampshire's defamation tort, Martin's complaint must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court.  See Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC, 864 F.3d 236, 247 (2d Cir. 2017).

---

[2] Martin also cites Jensen v. Hewlett-Packard Co., to support his defamation per se argument.  14 Cal. App. 4th 958, 965 (Cal. Ct. App. 1993) (applying California law).  In Jensen, a California court held that "unless an employer's performance evaluation falsely accuses an employee of criminal conduct, lack of integrity, dishonesty, in competence or reprehensible personal characteristics or behavior" the employer cannot be held liable for defamation per se.  Id.  (emphasis added).  Therefore, Jensen also does not obviate the requirement that an employer's statement be false in order for the employer to be held liable for defamation per se.

When falsity is an element of a state law defamation claim, federal courts have required plaintiffs to plead facts that, if proven true, would allow a reasonable person to consider the statement false.  See Swindol v. Aurora Flight Scis. Corp., 832 F.3d 492, 494-95 (5th Cir. 2016) (upholding district court's dismissal of employee's defamation claim, even though employee claimed statements by human resources manager were defamatory, because employee failed to allege the statements were false); see also Tannerite Sports, 864 F.3d at 252; Clark v. Viacom Int'l Inc., 617 F. App'x 495, 509-10 (6th Cir. 2015); Price v. Stossel, 620 F.3d 992, 1003 (9th Cir. 2010).

Here, Martin's complaint does not include any facts from which the court can reasonably infer that the Memo is false. See Foley, 772 F.3d at 75 (The court makes "reasonable inferences, drawn from the alleged facts, in the pleader's favor" when reviewing a Rule 12(b)(6) motion for failure to state a claim).  The complaint includes no assertions about Martin's professionalism or the reason for his termination.  On these topics, the complaint states:

> 12.  Mr. Martin was successful in filling the facility, bringing in approximately $16,000,000 in new entrance fees during his tenure.
>
> 13. Working relations between Mr. Martin and Dr. Mooney gradually deteriorated to the point that she decided to terminate his employment on February 15, 2018, and Mr. Martin is not challenging her right to do so.

> 14. . . . .[Dr. Mooney] personally sent a memo to each
> and every one of the 63 residential units at The
> Woodlands and the 76 units at Harvest Hill, thereby
> intentionally defaming and harming Mr. Martin's
> professional reputation by intruding upon his right to
> not have his affairs, <u>whether true or false</u>, known to
> others.

Doc. no. 1 at ¶¶ 12-14 (emphasis added). Therefore, not only does the complaint lack facts from which the court could draw the inference that the statement in the Memo may be false, in ¶ 14, the complaint appears to tacitly recognize that the Memo may contain a true statement.

The court concludes, based on the facts alleged in the complaint, that Martin has failed to plausibly allege that the statement in the Memo is false. The court dismisses Count III.

D. <u>Count IV: Breach of Contract</u>

In Count IV, Martin alleges that defendants are liable for breach of contract because the Memo contained confidential information about Martin's termination. Martin attached one page from the employee handbook to his Complaint. That page is titled "Personnel Records." It includes the statement that the Hospital "considers personnel files to be confidential and limits access to an employee's personnel file." Doc. no. 1-2. The page lists several circumstances in which the employer may

release information contained in a personnel file, but none appear to be applicable in this case.  Doc. no. 1-2.

Defendants argue that the court should dismiss Martin's breach of contract claim for two reasons: (1) the personnel records policy does not constitute a contract and cannot serve as the basis for a breach of contract claim; and (2) even if the policy constitutes a contract, defendants did not breach the contract because they did not disclose Martin's personnel file, or any information contained therein.

### 1. Martin's complaint sets forth a plausible contract claim

In order to state a breach of contract claim under New Hampshire law, a plaintiff "must allege sufficient facts to show (1) that a valid, binding contract existed between the parties, and (2) that [the defendant] breached the terms of the contract." Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 311 (D.N.H. 2012) (internal citations omitted).  A contract requires "offer, acceptance, consideration, and a meeting of the minds." Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006).  "A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Lassonde, 157 N.H. at 588 (quotation and alterations omitted).

Martin's complaint alleges that the personnel records policy in the employee handbook constitutes an offer which Martin accepted by becoming an employee. Martin also alleges that, as an at-will employee free to leave his job at any time, his continued employment constitutes the requisite consideration. See Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 737 (1998). The crux of defendants' response appears to be that the policies in the employee handbook were not contractual "offers"; therefore, Martin's acceptance of the Administrator position and continued employment were insufficient to transform the personnel records policy into a legally binding contract.[3]

A "primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, the plaintiff could never

---

[3] In support of this assertion, defendants attached Martin's 2013 job application to their reply. Martin moved to strike the job application on the basis that it is outside the four corners of the Complaint. In general, the court must decide a motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d). Courts have made "narrow exceptions" for official public records; for documents central to plaintiffs' claim; and for documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Martin's complaint does not reference or rely upon his 2013 job application. Therefore, the court grants Martin's motion to strike (doc. no. 10) and does not consider the job application in its ruling.

win." Foley, 772 F.3d at 72. However, a plaintiff need only sufficiently allege a plausible claim in order to survive a motion to dismiss and is "not required to submit evidence to defeat a Rule 12 (b)(6) motion." Id. At this early stage, accepting the facts in the complaint as true, construing them in the light most favorable to Martin, and drawing all reasonable inferences in Martin's favor, see id. at 68, the court concludes that it is plausible that the personnel records policy in the employee handbook constitutes a contract.

## 2. It is Plausible that Defendants Breached Hospital Policy

Defendants next argue that even if the personnel policies constituted a contract, the court should dismiss this claim because Martin's complaint does not allege that defendants disclosed information contained in his personnel file. Martin counters that it is reasonable to infer that information about the purported "pattern of unprofessional conduct" was reflected somewhere in his personnel file. He asserts that, at this pre-discovery stage of the case, the pertinent issue is whether he has plausibly alleged that defendants broke the contractual promise that the Hospital would not publicly disclose information about personnel matters without employee permission.

Martin is not arguing that the offending language from the statement ("pattern of unprofessional conduct") was taken verbatim from his personnel file. Rather, he alleges that it is plausible that the offending language characterizes information that was likely contained in his personnel file; therefore, publication of the statement violated the Hospital's personnel policy. On the one hand, it is not clear to the court that defendants' release of the offending statement—even if it characterizes information contained in Martin's personnel file—violates the Hospital's personnel policy. On the other hand, at this early stage, the court may not attempt to forecast Martin's likelihood of success on the merits. Rather, "a well-pleaded complaint may proceed even if a recovery is very remote and unlikely." See Ocasio-Hernandez, 640 F.3d at 13 (quotation and ellipses omitted). Therefore, drawing reasonable inferences in Martin's favor, see Foley, 772 F.3d at 75, the court concludes that Martin has plausibly alleged that defendants breached the Hospital's personnel policies by distributing the Memo. After discovery, the factual record will be clearer, and parties may revisit this issue at summary judgment or at trial.

For these reasons, the court denies defendants' motion as to Count IV.

E: Count V: Intentional Infliction of Emotional Distress

In Count V, Martin asserts a claim against Dr. Mooney for intentional infliction of emotional distress.

Under New Hampshire common law, the bar to establish intentional infliction of emotional distress "is very high." Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002). A plaintiff must show that the defendant, through "extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quotation omitted). The court must determine in the first instance "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Brewer v. K.W. Thompson Tool Co., 647 F. Supp. 1562, 1567 (D.N.H. 1986) (quotation omitted). The outrageous act must "go beyond all possible bounds of decency" and be "regarded as atrocious, and utterly intolerable in a civilized community." Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009). Severe emotional distress is an element of the tort. Konefal v. Hollis/Brookline Co-op. School Dist., 143 N.H. 256, 261 (1998).

Dr. Mooney argues that her conduct was not extreme or outrageous as a matter of law. In support, Dr. Mooney points to the New Hampshire Supreme Court's holding in Konefal. In Konefal, a school decided not to renew a teacher's contract

after that teacher refused to join a union.  Id. at 257.  The
teacher sued for intentional infliction of emotional distress.
Id.  The New Hampshire Supreme Court held that although the
school district's decision "may have arose from an improper
motive that may support a claim for wrongful termination," the
non-renewal did not support a claim for intentional infliction
of emotional distress.  Id. at 260.  The court explained that
"[a]lthough discharging an employee may be illegal and
reprehensible, a great deal more is required to approach
outrageous conduct."  Id. (quotation omitted).

Martin argues that Dr. Mooney's conduct is not as "benign"
as the employer's conduct in Konefal.  However, he fails to
explain or provide legal authority for the proposition that it
is more extreme and outrageous for an employer to send an
unfavorable memo about a lawful termination than it is for an
employer to illegally act against an employee.

Courts applying New Hampshire law have frequently dismissed
intentional infliction of emotional distress claims on the basis
that the defendant's actions were not extreme and outrageous as
a matter of law.  For example, in DeMeo v. Goodall, an
ophthalmologist brought a claim for "wrongful" infliction of
emotional distress against his employer after his employee
evaluation purportedly contained false and defamatory
information about the doctor's professional ability.  640 F.

Supp. 1115, 1117 (D.N.H. 1986). The court construed the claim
as an intentional infliction of emotional distress claim and
held the employer's evaluation failed as a matter of law to meet
the definition of outrageous conduct. Id. at 1118.

In Mikell, a case in which a teacher purportedly made a
knowing false statement to a vice-principal about items on a
student's desk in order to get the student expelled, the court
also concluded that the teacher's conduct was not extreme and
outrageous. 158 N.H. at 726, 730. The court reasoned that "a
teacher falsely reporting misconduct by a student is a
reprehensible act" but that it did not go "beyond all possible
bounds of decency." Id. at 730.

The court reached a similar result in Brewer, a case in
which an employer failed to provide an employee's doctor with
work-related chemical samples so the doctor could treat the
employee's work-related medical condition. Brewer, 647 F. Supp
at 1564, 1567. The employee was unable to return to work
without medical treatment and the employer ultimately fired the
employee. Id. at 1564. The court dismissed the employee's
intentional infliction of emotional distress claim because the
employer's actions were not "so outrageous, atrocious, and
utterly intolerable that no reasonable person could be expected
to endure" them and therefore, did not "rise to the level of

outrageousness and severity necessary to state a cause of action for intentional infliction of emotional distress."  Id. at 1567.

Here, Dr. Mooney notified senior residents that the facility's administrator had been terminated and provided a negative reason for his sudden departure.  This conduct is less extreme than the employers' conduct in DeMeo, Mikell, and Brewer.  The court concludes, therefore, that Dr. Mooney's actions do not rise to the level of extreme and outrageous conduct.  Having so held, the court need not address whether Martin's complaint plausibly alleges that he suffered severe emotional distress.  See Konefal, 143 N.H. at 261.  The court dismisses Count V.


### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 5) is granted as to counts III and V; and is denied as to counts I, II, and IV.  All claims are dismissed against DHH. Martin's motion to strike Martin's job application (doc. no. 10) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 3, 2020
cc: Counsel of Record